IN RE LASON, INC. SECURITIES LITIGATION,

No. 99–76079.

United States District Court,
E.D. Michigan,
Southern Division.

May 10, 2001.

David H. Fink, Fink, Zausmer, Farmington Hills, MI, for plaintiffs.

Carl H. von Ende, Steven A. Roach, Miller, Canfield, Detroit, MI, for defendants.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [39–1]; AND GRANTING UNDERWRITERS' MOTION TO DISMISS [43–1][1]**

TARNOW, District Judge.

## I. Introduction

This case arises out of a class action brought by purchasers of the common stock of Lason, Inc. (Lason) between February 17, 1998 and December 17, 1999 (class period). Plaintiffs allege that numerous statements made by Lason, a data capturing company, during the class period were fraudulent. In particular, plaintiffs allege that the company's entire corporate strategy was a fraud. This corporate strategy, as characterized by the plaintiffs, had two prongs, growth by: 1) acquiring and successfully integrating the companies that it was acquiring into its business; and 2) successful cross-selling products within the entire Lason enterprise. Plaintiffs claim that this strategy was a myth. Despite Lason's constant proclamations that it was successful at acquiring and integrating companies and cross-selling products, it was entirely unsuccessful. According to the plaintiffs, these constant assurances of success were fraudulent and the strategy was a lie.

The defendants brought this motion to dismiss the complaint. Dismissal is warranted, according to the defendants, because the plaintiffs fail to state a claim upon which relief may be granted with the necessary specificity as required by the Private Securities Litigation Reform Act's (PLSRA) heightened pleading requirements.

---

1. Law Clerk Carlos Bermudez provided quali-    ty research assistance.

## II. Background

Lason was incorporated as a Delaware company in 1995. Subsequent to incorporation, Lason grew at a fast rate, in large part, due to the companies growth by acquisition strategy. Lason acquired a large number of companies in the data management and outsourcing business.

These acquired companies were purchased partly in exchange for Lason stock. Because the stock played some role in the acquisition strategy, it was important that Lason stock maintain a high value. Plaintiffs allege that in order to maintain this value, defendants misstated earnings in violation of Generally Accepted Accounting Principles (GAAP) and continued to acquire new companies without the ability to integrate them or to cross-sell. These alleged GAAP violations and the continued acquisitions masked Lason's poor performance. And during this period, Lason continued to claim successful integration and cross-selling consistent with the overall corporate strategy. This amounts to Lason's advancement of a non-existent corporate strategy according to the plaintiffs.

Plaintiffs also claim that Lason continued to mislead investors as long as they possibly could. On December of 1999, Lason corporate officers made statements in response to sudden and unexpected volatility in the company's stock price. These officers stated that they were unaware of a sound reason for the decline. Defendant Rauwerdink, a Lason officer, attributed the drop to unfounded "chat-room" rumors on the Internet. One week after these statements, Lason announced that earnings would be approximately one-third lower than analysts and investors expected.

The plaintiffs allege that the defendants committed securities fraud. This fraud is based on: 1) the materially false and misleading prospectus in Lason's 1998 stock offering; 2) GAAP violations and fictitious income reports; 3) fraudulent statements in press releases; and 4) the December 1999 misrepresentations about the cause of Lason's decline.

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with allegations would entitle the plaintiff to relief." *G.M. Engineers and Associates v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).

The standard is more strict when claims contain allegations of fraud. Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity.

To state a claim under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b)(1998), and § 10(b)(5), promulgated thereunder by the SEC, 17 C.F.R. § 240.10b–5(1998), the plaintiff must allege: 1) misrepresentation of material fact with respect to the purchase or sale of a security; 2) *scienter* on the part of the defendant; 3) the plaintiff's reliance on the misrepresentation; and 4) proximately caused damages. *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir.1999).

The PSLRA amendment to the Securities Act required increased particularity in a plaintiff's pleadings of securities

fraud when a plaintiff may recover money damages. 15 U.S.C. § 78u–4(b)(2) (1998). Under the PSLRA, if a plaintiff fails to meet this requirement, the court may dismiss the complaint. 15 U.S.C. § 78u–4(b)(3). The PSLRA did not change the *scienter* that a plaintiff must prove; rather it changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss. *In re Comshare*, 183 F.3d at 549.

## IV. Discussion

The plaintiffs' claims can be divided into four parts as previously stated. The defendants contend that the Court should dismiss all of the claims because: (1) the plaintiffs failed to state a claim with the particularity required by the PSLRA and *Comshare*; and (2) all of the alleged fraudulent statements are protected forward looking statements.

*Comshare* is the principal Sixth Circuit case regarding the securities fraud pleading requirements under the PSLRA. In *Comshare*, the plaintiff, shareholders of the defendant company, appealed the district court's decision granting the defendant's motion for summary judgment. Comshare's policy was to recognize revenue when a customer contract was fully executed and the software had been shipped. Plaintiffs alleged that Comshare inappropriately claimed revenue before sales were final in violation of their own policy and in violation of GAAP. These misrepresentations were allegedly part of a scheme to defraud the public and to inflate stock prices so that individual defendants could sell their own shares at high prices.

The Sixth Circuit affirmed the district court's dismissal, but on different grounds. The Court wrote that "...under the PSLRA, a plaintiff may survive a motion to dismiss by pleading facts that give rise

to a 'strong inference of recklessness.'" *Comshare*, 183 F.3d at 550. The Sixth Circuit distinguished recklessness from negligence and adopted the definition articulated in *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir.1979). *Mansbach* defined reckless as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Comshare*, 183 F.3d at 550. The Court went on to state that evidence of defendant's motive and opportunity to commit securities fraud does not constitute "*scienter*" as required by § 10b or Rule 10b–5. In *Comshare*, the court held that the plaintiff plead motive and opportunity, not the required recklessness. As a result, the plaintiff's motion was dismissed.

## A. The Prospectus and Subsequent Alleged Misrepresentation in Press Releases

■ The plaintiffs in this case, however, did state the required elements as to the 1998 prospectus and subsequent press releases. The plaintiffs identified a number of false and misleading statements in the prospectus. *See, e.g.*, Amended Complaint ¶¶ 200–209. The plaintiffs identified such statements in press releases that followed. The plaintiffs further alleged that the false and misleading statements were made knowingly and/or recklessly. Unlike the plaintiffs in *Comshare*, the plaintiffs in this case allege more than simply motive and opportunity for defendants to commit fraud.

Motive and opportunity were certainly present in this case. The motive was for Lason to continue its growth by acquisition strategy and maintain the appearance of success. The opportunity arose every time that the defendants had the chance to utter falsities to the market to inflate confidence in the company strategy. In the present case, however, the defendants made statements that Lason successfully

integrated companies in the past. And defendants also claimed that Lason successfully effectuated a plan to cross-sell products. Plaintiffs allege that these statements inflated the price for stockholders and potential stockholders leading to inflated value and increased ability to perpetuate the alleged fraudulent scheme. The plaintiffs' pleadings in this case state that the defendants went past simply having a motive and opportunity—the defendants proceeded to act on that opportunity. These acts of asserting success with integrating and cross-selling when there were none can be characterized as highly unreasonable conduct which is an extreme departure from the standards of ordinary care. As the Court stated in *Comshare*, the PSLRA did not change the mental state required for liability, only what must be plead. *Comshare* 183 F.3d at 549. Therefore, the plaintiffs allege the mental state required for liability.

These misrepresentations were relied upon by the plaintiffs and were the proximate cause of the damages suffered. Lason's statement subsequent to the class period, however, were not relied upon; only those statements made by the company during the class period. Thus, to the extent that plaintiffs refer to Lason's statements during the class period, they successfully state a claim.

■ The more difficult question is whether the statements were protected as forward looking statements. The PSLRA provides a "safe harbor" for certain "forward-looking" statements. 15 U.S.C. § 77z–2 (Securities Act) and 15 U.S.C. § 78u–5 (Exchange Act). The PSLRA generally provides that a person shall not be liable for any forwardlooking statement if the statement is (1) immaterial or accompanied by meaningful cautionary statements; or (2) if the plaintiff fails to prove that the statement was made with actual knowledge that the statement was false or misleading. Lason contends that the statements in the 1998 prospectus and in subsequent press releases were protected by this safe harbor. They argue that the statements were forward looking and each was accompanied by meaningful cautionary statements. Further, they allege that the plaintiffs failed to allege knowledge that the statements were false or misleading.

The plaintiffs contend that these statements do not merit safe harbor protections. Plaintiffs concede that some language in the prospectus and the press releases were forward looking. Further, the press releases contained disclaimers about risks. Even so, the statements are based on the premise that the defendants are cross-selling, integrating, and successful. These statements are based on historical and present facts and thus not forward looking. Plaintiffs argue that the statements may have been misrepresentations about Lason's current and historical corporate strategy, Lason's ability to effectuate that strategy, and the success of the company up to that point. According to plaintiffs, the statements were not merely forward looking statements; they contained false statements about past and present facts.

■ The Court agrees with the plaintiffs. They allege that defendants made false and misleading statements in the prospectus and subsequent press releases. While these statements were mixed with forward looking statements, the actionable statements were based on fraudulent historical and current facts. " 'The statutory safe harbor, ... does not insulate defendants from private securities liability based on statements that misrepresent historical/hard current facts.' " *In re Telxon Corp. Sec. Lit.*, 133 F.Supp.2d 1010, 1031 (N.D.Ohio), *quoting Gross v. Medaphis*, 977 F.Supp. 1463 (N.D.Ga.1997). The

statements made in the prospectus and the press releases that are based on such fact are not protected by the safe harbor, nor are they mere puffery.

■ The Court comes to a different conclusion as to the Underwriters' liability regarding the 1998 prospectus. The plaintiffs contend that the underwriters are liable for securities fraud for the 1998 prospectus. The plaintiff failed to allege that the underwriters had actual knowledge that statements in the 1998 prospectus were false. In order to state a claim against the underwriters, the plaintiffs must have made this allegation. 15 U.S.C. § 77z–2(c)(1)(B)(ii)(2000). Not only did the plaintiffs fail to allege that the underwriters had actual knowledge, quite the contrary, the complaint alleges that these defendants neglected to conduct a reasonable investigation. The underwriters' negligence does not amount to reckless or knowing misrepresentation. For that reason, the court grants the underwriters' motion to dismiss [43–1].

## B. GAAP Violations

The defendants characterize the plaintiffs' allegations to include a separate claim regarding violations of GAAP. The defendants argue that violations of GAAP do not state a claim.

■ The Sixth Circuit recognized in *Comshare* that "[t]he failure to follow GAAP is, by itself, insufficient to state a securities fraud claim." *Comshare,* 183 F.3d at 542. In this case, however, the failure to follow GAAP is not "by itself." Plaintiffs allege that Lason violated GAAP to facilitate its fraudulent business plan. The alleged GAAP violations are a part of and support the larger allegations of fraud. Therefore, standing alone there is no separate claim of securities fraud. But the GAAP violations are pertinent to the alleged reckless conduct of the defendants.

## C. Lason's December 1999 Statements

■ Finally, the defendants contend that statements made by certain Lason officers in December of 1999 do not constitute actionable fraud. On December 9, 1999 and four days later, Lason officers made statements about the recent volatility in the company's stock price. These statements indicated that the company was either unaware of the cause of the volatility, or the fluctuations were caused by Internet rumors. Lason argues that the plaintiff failed to demonstrate that the statements were false when made. As a result, Lason contends the motions should be dismissed. The Court finds defendants' argument unconvincing. The plaintiff states a claim as to these statements.

## V. Conclusion

In consideration of the pleadings and the Court being duly advised of the premises:

IT IS ORDERED that defendants' motion to dismiss [39–1] is DENIED IN PART AND GRANTED IN PART. The motion is DENIED as to all alleged material misstatements made during the class period. The motion is GRANTED as to all alleged material misstatements made after the class period.

IT IS FURTHER ORDERED that the defendant Underwriters' motion to dismiss [43–1] is GRANTED.